UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| CAMERON D. WATTS,<br><br>              Petitioner,<br><br>v.<br><br>TIM WENGLER,<br><br>              Respondent. | Case No. 1:12-cv-00215-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Cameron D. Watts's Petition for Writ of Habeas Corpus (Dkt. 3). Respondent has filed an Answer and Brief in Support of Dismissal (Dkt. 14). Petitioner has filed a reply (Dkt. 16), and Respondent has filed a sur-reply (Dkt. 17). The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on November 30, 2012.[1] *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). Having carefully reviewed the record, including the state court record, the Court finds that the

---

[1] Petitioner asserts that Respondent's lodging of his state court records did not include the April 29, 2010 judgment of the state trial court dismissing his petition for postconviction relief. (Dkt. 16 at 1.) Petitioner is mistaken; the written opinion of the state court can be found in State's Lodging C-1 at pages 155-176, and the judgment can be found at page 177.

**MEMORANDUM DECISION AND ORDER - 1**

parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the Petition and dismissing this case.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *Watts v. State*, Docket No. 37748, 723 (Idaho Ct. App. Nov. 22, 2011) (unpublished), which is contained in the record at State's Lodging D-4. The facts will not be repeated here except as necessary to explain the Court's decision.

**1.     Petitioner's Guilty Plea**

Pursuant to a plea agreement, Petitioner pleaded guilty in the Fifth Judicial District in Twin Falls County, Idaho, to first degree felony murder. The victim died during the course of a kidnaping in which Petitioner admittedly participated. (State's Lodging D-4 at 1.)

In exchange for Petitioner's guilty plea, the state agreed to stipulate that the fixed portion of the sentence would be 20 years imprisonment; the state also agreed not to pursue various lewd and lascivious conduct charges against Petitioner. (State's Lodging C-7, C-8.) Petitioner filled out a guilty plea advisory form stating that he had sufficient time to discuss the plea with his attorney, that he had reviewed the discovery in the case,

**MEMORANDUM DECISION AND ORDER - 2**

and that he understood "no one, including [his] attorney, [could] force [him] to plead guilty." (State's Lodging C-6 at 6.) At the change of plea hearing, Petitioner and the trial judge engaged in a thorough plea colloquy, in which Petitioner stated that he fully understood all of the questions in the guilty plea advisory form, that his counsel had answered all of his questions, that no one had pressured him into pleading guilty, and that he enough time to consider the plea with his counsel and with friends and family. (State's Lodging C-1 at 7-15.)

Petitioner was sentenced to a unified term of life imprisonment with the first 20 years fixed. (State's Lodging D-4 at 2.) He appealed, but the Idaho Supreme Court dismissed the appeal based on the appeal waiver in Petitioner's plea agreement. (State's Lodging B-2.)

### 2. Postconviction Proceedings

Petitioner next filed a postconviction petition in the state trial court. He was appointed counsel (State's Lodging C-1 at 39), who voluntarily dismissed all of the claims in the petition except Petitioner's claims that (1) counsel coerced him into pleading guilty and (2) counsel rendered ineffective assistance by failing to file a motion to withdraw Petitioner's guilty plea prior to sentencing. (State's Lodging D-4 at 2.) The trial court dismissed these two remaining claims after holding an evidentiary hearing. (State's Lodging C-1 at 155-76.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court declined review. (State's Lodging D-4, D-7.)

**MEMORANDUM DECISION AND ORDER - 3**

# DISCUSSION

Petitioner asserts three claims in his federal habeas petition: (1) that his trial counsel coerced him into pleading guilty; (2) that his trial counsel rendered ineffective assistance by failing to move to withdraw Petitioner's guilty plea; and (3) that he is actually innocent. (Pet., Dkt. 3, at 4-6.)

**1.     Standard of Law**

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is generally limited to instances where the state court's adjudication of the petitioner's claim

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. Section 2254(d)(1) has two clauses, each with independent meaning. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. The standard of § 2254(d) is onerous and is satisfied only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

**MEMORANDUM DECISION AND ORDER - 5**

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

When a petitioner contests the reasonableness of the state court's factual determinations, a federal court must undertake a § 2254(d)(2) analysis. To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified four types of unreasonable factual determinations in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when state courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective"; or (4) when state courts "plainly misapprehend or misstate the record in making their

findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Taylor v. Maddox*, 366 F.3d 992, 1000-01 (9th Cir. 2004). If the state court's decision was based on an unreasonable determination of the facts, then the Court is not limited by § 2254(d)(1), but proceeds to a de novo review of the petitioner's claims, which may include consideration of evidence outside the state court record. *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010).

2.   **Analysis of Claim 1: Coercion of Guilty Plea**

A guilty plea is constitutionally valid only if it is voluntary and intelligent. *Brady v. United States*, 397 U.S. 742, 48 (1970). A plea is "intelligent" if a defendant has real notice of the charges against him and understands the federal constitutional rights he is waiving by pleading guilty, and it is "voluntary" if the defendant "possesses an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 & n.5 (1969) (internal quotation marks omitted). Another definition of a "voluntary and intelligent" plea is one that "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56-57 (quoting *McMann v. Richardson*,

**MEMORANDUM DECISION AND ORDER - 7**

397 U.S. 759, 771 (1970)). The Idaho Court of Appeals appropriately cited *Hill v. Lockhart* and rejected Petitioner's claim that his plea was not voluntary:

> Watts testified that he was pressured into pleading guilty by the actions of his attorney and staff. The district court found Watts' assertions were in direct conflict with the record. In the guilty plea advisory form, Watts indicated "yes" when asked "*Have you had sufficient time to discuss your case with your attorney*?" and indicated "no" when asked "*Do you need any additional time before you enter your guilty plea(s)*?" During the change of plea hearing, the district court asked Watts, "*Have you had enough time to discuss this matter with your lawyers*?" and once again Watts replied "yes." During the change of plea hearing, the following exchange took place between the court and Watts:
>
> > THE COURT: Is there any other source, *whether from attorney's pressure*, family pressure or otherwise, that you feel is making this a coercive event today?
> >
> > THE DEFENDANT: No
> >
> > THE COURT: *This is entirely a voluntary choice by you*, Mr. Watts?
> >
> > THE DEFENDANT: Yes.
> >
> > THE COURT: *And you feel that you've had enough time, as you've told me, to talk to your lawyers about this decision*; is that right?
> >
> > THE DEFENDANT: Yes.
> >
> > THE COURT: Have you also had time to talk to family or friends that you know and trust in making this kind of choice?
> >
> > THE DEFENDANT: Yes.
> >
> > THE COURT: And is there anyone in that vein that you'd like to talk to further before proceeding on with this decision today?

**MEMORANDUM DECISION AND ORDER - 8**

>        THE DEFENDANT: No.
>
>    Watts testified that he did not remember filling out the guilty plea advisory form. The district court found this testimony to not be credible because he also admitted on cross-examination that he filled out the form in his own handwriting. Watts also argues that he only had a few hours to decide whether to accept the plea offer. The court also found that the discussions between Watts and his counsel were not as limited as he testified. The court pointed to meetings—between Watts and his counsel—on October 4 and 6 to discuss the lewd and lascivious conduct allegations and the meetings over several months prior to the execution of the plea agreement to demonstrate that Watts had sufficient time to consider his options. The district court found Watts' testimony to not be credible.
>
>    Watts further testified at the evidentiary hearing that he lied to the court [during the plea colloquy] because counsel said that if Watts "told the truth on questions like that, that it would blow up in [his] face." Once again, the district court did not find Watts to be credible. Watts' testimony implied that counsel deliberately instructed Watts to lie to the court. Counsel adamantly denied making that statement or instructing Watts to do anything other than to tell the truth. The district court found counsel's testimony to be more credible than Watts' testimony and, therefore, found Watts' assertion that he lied to the court not credible.
>
>    Credibility is a matter left to the district court. *Larkin [v. State]*, 115 Idaho [72,] 73, 764 P.2d [439,] 440 [Idaho Ct. App. 1988]. Watts The district court determined that Watts' testimony regarding his coercion claim was not credible. On the other hand, Watts' trial counsel's testimony was deemed credible. Allegations for post-conviction relief are insufficient for the granting of relief when they are clearly disproved by the record of the original proceedings. *Workman v. State*, 144 Idaho 518, 523, 164 P.3d 798, 803 (2007). Watts' claim of coercion is directly contradicted by the record, namely the guilty plea advisory form and the plea colloquy. Watts' attempts to explain away his prior statement were found to be not credible. Watts has failed to demonstrate that any factual findings of the district court are clearly erroneous. The district court did not err in denying Watts' claim that he was coerced into pleading guilty.

(State's Lodging D-4 at 4-5) (emphasis added) (alteration in original).

**MEMORANDUM DECISION AND ORDER - 9**

Given Petitioner's own statements in the guilty plea advisory form and during the plea colloquy in open court, the court of appeals' decision was consistent with a reasonable application of *Hill*. Petitioner argues that those statements should not be considered because the statements themselves were made under coercion and that he simply said what counsel told him to say. (Dkt. 16 at 5-8.) However, the state district court determined after an evidentiary hearing that Petitioner's counsel, who testified extensively as to circumstances surrounding the guilty plea, was more credible than Petitioner. Counsel testified he told Petitioner that he needed to tell the truth during the plea colloquy:

> [These] choices are the defendants [sic]. We are, in many ways, messengers. We tell them what the law is. We tell them what our opinion is, but they have to make the decisions. And certainly answering those questions to the judge, that's his responsibility. Nobody tells him to exaggerate or to change it or bend it, just answer the questions.

(State's Lodging C-2 at 122-23.)

The district court believed counsel's testimony that Petitioner "wanted to go to trial until the sex offense allegations surfaced, and after that wanted to plead in order to get the benefit of the non-prosecution agreement which included 'sealing' the agreement." (State's Lodging C-1 at 166.) There is nothing unreasonable about the court's factual findings that Petitioner was not lying during his plea colloquy or that the plea was based on Petitioner's desire to avoid prosecution for multiple sex offenses. Thus, based on the colloquy, the guilty plea advisory form, and trial counsel's testimony at the

**MEMORANDUM DECISION AND ORDER - 10**

evidentiary hearing, the Court concludes that the Idaho Court of Appeals' decision rejecting Petitioner's coercion claim was reasonable.

3.  **Analysis of Claim 2: Ineffective Assistance for Failing to Move to Withdraw Petitioner's Guilty Plea**

A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 11**

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To show prejudice based on deficient performance of counsel in a case where the defendant pleaded guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. To show prejudice based on counsel's failure to move to withdraw a guilty plea, Petitioner must show that such a motion would have been granted by the trial court.

The Idaho Court of Appeals noted that Petitioner's claim encompassed two distinct arguments: "(1) [Petitioner] specifically directed his attorneys to file a motion to withdraw his plea and, in the alternative; (2) counsel should have concluded from [Petitioner's] statements to him that [Petitioner] wanted to withdraw his plea and counsel should have acted on this suggestion." (State's Lodging D-4 at 5.) With respect to the first theory, the court relied on the state district court's credibility findings in concluding that Petitioner did not ask counsel to move to withdraw the plea:

> Watts claims that he specifically instructed his counsel to file a motion to withdraw his guilty plea. In support of this contention, Watts offered the testimony of his girlfriend. She testified that they talked numerous times between the entry of the plea and sentencing and that Watts communicated his desire to her to withdraw his plea. However, *the district court found that there was no credible evidence in the record that Watts' girlfriend ever communicated this desire to Watts' counsel or their staff.* Watts also testified that he "wanted" to withdraw his guilty plea. On the

other hand, one of his attorneys testified that he met with Watts many times between the plea and sentencing and not once did Watts voice a desire to change his plea. *Numerous recorded conversations between Watts and his counsel were admitted into evidence and the district court found that in none of them did he specifically ask to have his plea withdrawn*. The district court also took note of a letter Watts wrote to the prosecutor and a recorded conversation between Watts and his aunt, neither of which mentioned a desire to withdraw his plea. Finally, another of Watts' attorneys testified that Watts never directed him to file a motion to withdraw his guilty plea and that he would not have disregarded such a request. Watts testified that he told this attorney that he "wanted" to withdraw his plea, to which the attorney responded that there was "no way you could do it." The district court found that the attorney's statement was an expression of opinion that the motion would be unsuccessful and that Watts would lose the benefit of the plea bargain. *The district court concluded that Watts did not instruct counsel to file a motion to withdraw his plea and any interpretation of Watts' testimony to the contrary was not credible*.

Again, this Court defers to the district court's credibility determinations. In addition, the reasonable inferences from and the weight to be given to the evidence is the sole province of the trial court. *Larkin*, 115 Idaho at 73, 764 P.2d at 440. Watts has failed to demonstrate that the district court's factual findings are clearly erroneous. *Watts did have discussions with his counsel about withdrawing his plea, but nowhere does the record reflect that Watts actually told his counsel to file such a motion*. Watts challenges only the district court's factual determination and not the application of the law based thereon. Consequently, the district court did not err in denying Watts' claim that counsel provided ineffective assistance in failing to file a motion to withdraw guilty plea after being requested to do so.

(State's Lodging D-4 at 6-7) (emphasis added).

The court of appeals then went on to discuss Petitioner's alternative claim that "his conversations with his attorneys and their staff placed them on notice of his desire to withdraw his plea and, therefore, they should have known to file a motion prior to sentencing." (*Id*. at 7.) Analyzing the claim under a failure-to-advise theory, the court of

**MEMORANDUM DECISION AND ORDER - 13**

appeals again relied on the district court's finding that trial counsel's testimony was credible, while Petitioner's was not:

> The record is undisputed that counsel consulted with Watts about withdrawing his plea. Counsel discussed the plea in the weeks prior to sentencing as evidenced by the recorded jail conversation. *Even Watts acknowledges that he was consulted on this subject prior to his sentencing. The district court found that counsel consulted with Watts concerning the advantages and disadvantages of filing a motion to withdraw his plea and that Watts did not instruct counsel to withdraw his plea because he himself concluded that it was not in his best interest to do so.* The district court's findings of fact are supported by the record and are not clearly erroneous.
>
> An attorney cannot sua sponte determine to file a motion to withdraw a client's guilty plea. That decision must be made by the client. An attorney's obligation in this regard is limited to consulting with the client and giving him or her proper advice regarding the process. *Watts was advised that if he was successful in withdrawing his plea, the State would not be bound to its sentencing recommendation or its commitment not to file the lewd conduct charges. The district court noted from the evidence that Watts had a great fear of going to the penitentiary labeled as a sex offender*, which is why that portion of the plea agreement was sealed. Watts was consulted about withdrawing his guilty plea and has not asserted that such advice was improper. The district court held that counsel's performance regarding this matter did not fall below an objective standard of reasonableness[,] and we agree.

(*Id*. at 8) (emphasis added).

The Idaho Court of Appeals' disposition of Petitioner's claim that counsel should have filed a motion to withdraw the plea was a reasonable application of *Strickland*. The state district court found credible an attorney's testimony that Petitioner never directed him to file such a motion. The court reasoned that counsel "would have no reason to disregard [a] request to withdraw the plea, let alone a reason to deny that [Petitioner]

asked him [to] withdraw the plea." (State's Lodging C-1 at 170.) The court found that Petitioner did not ask his counsel to withdraw the plea, but that he merely expressed a desire to do so, the result of which was that Petitioner himself decided not to pursue the motion. (*Id*. at 168.) All of these factual findings were reasonable in the light of the evidence before the state court.

With respect to Petitioner's claim that his counsel should have filed a motion to withdraw the plea even though Petitioner had not asked him to do so, the court of appeals reasonably held that given Petitioner's desire to avoid prosecution on the lewd conduct charges, counsel did not perform deficiently by filing a motion that would open Petitioner up to all of those charges that the State had earlier agreed not to pursue. (State's Lodging D-4 at 8.) Petitioner has not shown that his counsel's actions in not moving to withdraw Petitioner's guilty plea fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689.

4.  **Analysis of Claim 3: Actual Innocence**

Petitioner asserts that he is actually innocent. A freestanding claim of actual innocence is not cognizable on collateral review in a federal habeas corpus action; however, a habeas petitioner may avoid a procedural bar, such as the statute of limitations, by making a credible showing of actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which

a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").

Here, Petitioner raises actual innocence primarily "to show he suffered prejudice from the other two constitutional violations asserted" in the Petition. (Dkt. 16 at 4.) However, because the Court has concluded that there was no constitutional error in Petitioner's state court proceedings, there is no need to address whether Petitioner suffered prejudice as a result of any such error.[2]

## CONCLUSION

The Idaho Court of Appeals' decision rejecting Petitioner's habeas claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Moreover, the state courts' findings of fact were supported by the record and are not unreasonable. Therefore, the Petition will be denied.

## ORDER

**IT IS ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED, and this entire action is DISMISSED with prejudice.

2.  The Court does not find its resolution of this habeas matter to be reasonably

---

[2] Additionally, the Court notes that Petitioner's assertion of innocence appears to be based on his statement that he left the scene before the victim died and had no part in the actual killing. But as Petitioner was informed by trial counsel years ago, a conviction for first degree felony murder does not require that Petitioner be "the person that actually killed the . . . victim" (State's Lodging C-2 at 102); Idaho's felony murder rule allows for a conviction so long as the defendant "had the specific intent to commit the predicate felony." *State v. Dunlap*, 313 P.3d 1, 20 (Idaho 2013).

**MEMORANDUM DECISION AND ORDER - 16**

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.



DATED: **January 10, 2014**

_____
Honorable Candy W. Dale
United States Magistrate Judge